# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| WILLIAM COLLINS, et al., | : | Case No. 3:18-cv-191 |
| | : | |
| Plaintiffs, | : | Judge Thomas M. Rose |
| | : | |
| v. | : | |
| | : | |
| THE STABLE BAR, LLC, et al., | : | |
| | : | |
| Defendants. | : | |

## ENTRY AND ORDER DENYING PLAINTIFFS' MOTION TO DISMISS YOSHIKO GILLETTE'S COUNTERCLAIM (DOC. 11)

This case is before the Court on the Motion to Dismiss (Doc. 11) filed by Plaintiffs William and Eva Collins (individually, "William" and "Eva," and together, "Plaintiffs"). Plaintiffs brought this action against Defendants The Stable Bar, LLC ("Stable Bar"), Jell's Sports Grill, LLC ("Jell's"), and Yoshiko Gillette, the sole owner of both Stable Bar and Jell's, for unpaid wages allegedly owed under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 2901, *et seq.*, and Ohio Minimum Wage Standards Act, Ohio Rev. Code 4111 ("Chapter 4111"). With her Answer to the Complaint, Gillette filed a Counterclaim alleging that Plaintiffs breached a contract to purchase Stable Bar for $300,000, with a $50,000 down payment. In the instant Motion to Dismiss, Plaintiffs argue that Gillette's counterclaim should be dismissed for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). For the reasons below, the Court **DENIES** the Motion to Dismiss.

I.     **BACKGROUND**

As alleged in the Complaint, Plaintiffs began working for Gillette at Stable Bar in December 2016.  (Doc. 1 at ¶ 15.)  William worked as a manager and Eva was a bartender and server.  (*Id.* at ¶ 16, 19.)  In February and March 2017, William also worked as a manager at Jell's.  (*Id.* at ¶ 18.)  Plaintiffs allege that Defendants Gillette, Stable Bar and Jell's never compensated them for the hours that they worked.  (*Id.* at ¶ 21-22.)  Plaintiffs terminated their employment with Defendants in January 2018.  (*Id.*)

As alleged in Gillette's Counterclaim, Plaintiffs asked to purchase Stable Bar in June 2017.  (Doc. 10 at ¶ 47.)  Gillette claims that Plaintiffs agreed to a purchase price of $300,000, with a $50,000 down payment.  (*Id.* at ¶ 48.)  In September 2017, Plaintiffs assumed all management of Stable Bar, also a part of their alleged agreement with Gillette, and began representing to vendors and employees that they were the new owners.  (*Id.* at ¶ 49.)  Gillette alleges that Plaintiffs also assumed control of payroll, vendor orders and the Stable Bar Facebook account—where it announced that they were the new owners.  (*Id.* at ¶ 50.)  In the Fall of 2017, Gillette asked Plaintiffs to make the $50,000 down payment per their agreement.  (*Id.* at ¶ 51.)  Gillette claims that text messages between the parties confirm that, at this time, Plaintiffs intended to complete the purchase of the business.  (*Id.*)  When Gillette did not receive the down payment, she investigated and determined that payroll and vendors were being paid cash and no records of Stable Bar's finances were being kept.  (*Id.* at ¶ 52.)

On January 8, 2018, Gillette texted a message to William that she was going to take over running the bar until the sale was completed because "ultimately, it is my responsibility." (*Id.* at ¶ 53.) William replied, "A lot to discuss if that will be my choice still. I can not run a place after you run it in the ground again." (*Id.* at ¶ 54.) Plaintiffs never purchased Stable Bar from Gillette. Gillette alleges that Plaintiffs breached an oral agreement to purchase Stable Bar, which has caused her damages. (*Id.* at ¶ 55.)

## II. MOTION TO DISMISS STANDARD UNDER RULE 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this Rule "does not require 'detailed factual allegations' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual allegations "to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (2009), quoting *Twombly*, 550 U.S. 544, 547 (2007). A claim is facially plausible when it includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This standard is not the same as a probability standard, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

When ruling on a motion to dismiss, the Court must accept the factual allegations of the complaint as true and construe them in a light most favorable to the non-moving party. *Twombly*, 550 U.S. at 554-55. "The Court need not accept as true, however, a legal

3

conclusion couched as factual allegations." *Id*. If Plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

**III.	ANALYSIS**

A breach of contract claim has four elements: (1) the existence of a contract, (2) that the complainant fulfilled its contractual obligations, (3) that the other party failed to fulfill its contractual obligations, and (4) that the complainant incurred damages as a result of the other party's failure. *See V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012).

Plaintiffs contend that Gillette's counterclaim for breach of contract should be dismissed for two reasons. First, they argue that Gillette fails to allege the existence of a contract. Second, they argue that, even if there were a contract, Gillette fails to allege that she suffered any damages from Plaintiffs' alleged breach. The Court considers each argument in turn below.

**A. Whether Gillette Alleges the Existence of a Contract**

Plaintiffs argue that Gillette fails to plead the existence of a contract because there are no factual allegations demonstrating a meeting of the minds as to the alleged contract's essential terms. (Doc. 11 at 3-4 citing *Sun v. CM Prods.*, 393 F. App'x 283, 286 (6th Cir. 2010) (applying Illinois law).) Plaintiffs' citation to a case applying Illinois law is curious, even if to assert a generally accepted tenet of contract law, when all the parties

4

reside or do business in Ohio and the entire dispute between them occurred in Ohio.[1] A federal court adjudicating a state law claim pendent to a federal claim must apply the choice of law rules of the forum state. *Glennon v. Dean Witter Reynolds, Inc.*, 83 F.3d 132, 136 (6th Cir. 1996). Under Ohio choice-of-law rules, when the parties to a contract have not contracted to apply particular state's laws, the law of the state with the most significant relationship to the contract applies. *Sky Techs. Partners, LLC v. Midwest Research Inst.*, 125 F. Supp. 2d 286, 294 (S.D. Ohio 2000) (citing *International Ins. Co. v. Stonewall Ins. Co.*, 863 F. Supp. at 601 (S.D. Ohio 1994). Factors to consider when making this determination include: (1) place of contracting; (2) place of negotiations of the contract; (3) place of performance; (4) location of subject matter of the contract; and (5) domicile, residence, nationality, place of incorporation and place of business of parties. *Id*. Here, all of these factors, to the extent they are alleged, establish that Ohio has the most significant relationship to the contract. The Court will apply Ohio law.

The essential elements of a contract include an offer, acceptance, contractual capacity, consideration, a manifestation of mutual assent, and legality of object and consideration. *Artisan Mechanical Inc. v. Beiser*, 12th Dist. Butler No. CA2010–02–039, 2010–Ohio–5427, ¶ 26. "A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract." *Beiser* at ¶ 27.

A meeting of the minds occurs if "a reasonable person would find that the parties manifested a present intention to be bound to an agreement." *Zelina v. Hillyer*, 165 Ohio

---

[1] Plaintiffs cite Ohio law elsewhere in their supporting memorandum, but do not address the choice-of-law question.

5

App.3d 255, 846 N.E.2d 68, 2005–Ohio–5803, ¶ 12. "The parties must have a distinct and common intention that is communicated by each party to the other." *Champion Gym & Fitness, Inc. v. Crotty*, 178 Ohio App.3d 739, 744, 900 N.E.2d 231, 2008–Ohio–5642, ¶ 12.

Plaintiffs argue that Gillette fails to plead essential elements of the contract "such as when transfer of ownership would take place, how financing would occur, how payment was to be made, how the company's assets and inventory would be handled, or other numerous terms essential to any agreement to sell a business." (Doc. 11 at 4.) Gillette counters that she has plead sufficient details regarding the essential elements of the contract to withstand a motion to dismiss. The Court agrees.

The details noted by Plaintiffs are not essential to establish the existence of a contract. Gillette alleges that she offered to sell Stable Bar for $300,000 to Plaintiffs, with $50,000 down payment. As the sole owner of Stable Bar, Gillette had the authority to enter into a contract for its sale. She alleges that Plaintiffs accepted her offer. Plaintiffs' acceptance and intention to take over Stable Bar was demonstrated by the allegation that they took over its management and represented to vendors and others that they were the new owners. Nothing in the Complaint or Counterclaim suggests that any of the parties lacked contractual capacity. To the contrary, the only inference is that the parties were all competent and understood the nature of their relationships with each other. Gillette has alleged a meeting of the minds as to the essential terms of the alleged oral agreement to sell Stable Bar.

### B. Whether Gillette Alleges Damages

Plaintiffs also argue that Gillette has failed to allege damages. Gillette alleges that, as a result of Plaintiffs' breach of their agreement to purchase Stable Bar, she "has been injured." (Doc. 10 at ¶ 55.) Standing alone, this allegation might not pass muster under *Iqbal*. *Iqbal*, 556 U.S. at 677. However, the Court must construe this allegation along with the rest of the Counterclaim and in the light most favorable to Gillette, as the non-moving party. *Twombly*, 550 U.S. at 554-55. Gillette would have received $300,000 if Plaintiffs had performed their obligations, but, instead, she received nothing. It is reasonable to infer that Gillette stood to profit from Stable Bar's sale. If Plaintiffs can prove otherwise, they may prevail at a later stage of the litigation. For now, Gillette's allegations are sufficient to proceed with her Counterclaim.

### IV. CONCLUSION

For the reasons above, Plaintiffs' Motion to Dismiss (Doc. 11) is **DENIED**.

**DONE** and **ORDERED** in Dayton, Ohio, this Friday, November 2, 2018.

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE